# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

JAMEL MCKELVEY,

      Plaintiff,

v.                                  Case No. 2:23-cv-00146

C.O. SPENCE, *et al.*,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are the following motions: (1) a Motion to Dismiss filed by Ronnie Thompson ("Thompson") (ECF No. 22); (2) a Motion to Dismiss filed by Wexford Health Sources, Inc. and Unknown Medical Staff ("the Wexford Defendants") (ECF No. 27); (3) a Motion to Dismiss filed by Aramark Correctional Services, LLC ("Aramark") (ECF No. 31); (4) a Motion to Dismiss filed by C.O. Spence ("Spence") (ECF No. 34); (5) a Motion to Dismiss filed by C.O. Roop ("Roop") (ECF No. 36); (6) a Motion to Designate Motion to Dismiss as Unopposed and to Dismiss for Failure to Prosecute filed by the Wexford Defendants (ECF No. 42); (7) a Motion to Designate Motion to Dismiss as Unopposed and to Dismiss for Failure to Prosecute filed by Defendant Thompson (ECF No. 43); and (8) a Motion to Designate Motion to Dismiss as Unopposed and to Dismiss for Failure to Prosecute filed by Defendants Spence and Roop (ECF No. 44). Each of these motions will be addressed herein.

## I.    *PROCEDURAL HISTORY*

This matter is proceeding on Plaintiff's Amended Complaint filed on April 5, 2023. (ECF No. 9).  In January 2023, Plaintiff was incarcerated at the South Central Regional Jail ("SCRJ") after pleading guilty to drug and weapons charges.  Plaintiff was placed in a segregation unit on January 30, 2023.  (ECF No. 23 at 2).

The Amended Complaint alleges that, on January 31, 2023, as Plaintiff reached out of his segregation cell food slot to obtain medication, C.O. Spence "punched, scratched, and grabbed Plaintiff's hand and pounded it into the metal food slot."  (ECF No. 9 at 3). Plaintiff further alleges that Spence then bent his thumb backwards, causing it to dislocate.  (*Id.*)  Plaintiff claims that he reset his own thumb and called for help from a nurse who was distributing medication with C.O. Roop on the upper level of his unit. When Plaintiff told the nurse that Spence had dislocated his thumb, Roop allegedly said "no he didn't," and slammed Plaintiff's food slot shut.  (*Id.* at 4).  Plaintiff further alleges that, three weeks later, he saw a doctor, who scheduled him for an MRI, but then he was transferred to another correctional facility two days before the MRI was to take place. (*Id.*)  Plaintiff believes that his "thumb was dislocated and ligaments were torn" and asserts that he "can't fully use" it.  (*Id.*)  Thus, he wants Spence held responsible for the injury to his thumb.  (*Id.*)  He also makes a conclusory assertion that "other COs were present and colluded with [Spence] and/or corroborated his false allegations."  (*Id.*)[1] Plaintiff further seeks to hold the "medical provider" liable for "not treating [his] injury." (*Id.*)

---

[1] This allegation is presumed to be brought against C.O. Roop.

Unrelated to his claims concerning his thumb, the Amended Complaint also alleges that, "multiple times," Plaintiff informed "jail staff" that he was Jewish and required a kosher religious diet. (*Id.*) Despite filling out paperwork to receive a special religious diet, Plaintiff claims that there was a two-week delay before his diet was updated and he began receiving special diet trays. (*Id.*) He further claims that, during this time (between 1/30/23 and 2/13/23), multiple unidentified correctional officers denied him meals. (*Id.*) It is further apparent from the Amended Complaint that Plaintiff was dissatisfied with the food provided to him and claims that it made him sick. (*Id.*) He further alleges that unidentified correctional officers placed his food on the floor in an unsanitary or inhumane manner. (*Id.*)

Plaintiff also summarily alleges that the "Superintendent" did not respond to his grievances and that he wants the "Superintendent, food service provider, and jail staff to be held responsible for denying me meals, recreation, showers, and treating me inhumane because of their own prejudice, my religious preference, my ethnicity, and my housing in the jail." (*Id.*) Plaintiff seeks monetary damages from each defendant for his injuries and for pain and suffering. (*Id.* at 5).

On July 18, 2023, the undersigned granted in part and denied in part Plaintiff's motion to preserve and compel recorded evidence. (ECF No. 11). In that Order and Notice, the undersigned advised Plaintiff of his obligation to update the court with any changes in his address or other contact information. (ECF No. 11 at 2 n.1). Plaintiff was further warned that the failure to do so may result in the dismissal of this civil action for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. (*Id.*)

On January 24, 2024, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and Costs and ordered that the defendants be served with

process. (ECF No. 18). That Order and Notice again advised Plaintiff of his obligation to update the court with any changes in his address or other contact information and warned that the failure to do so would result in the dismissal of this civil action for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. (*Id.*)

Upon being served with process, Defendants filed motions to dismiss. (ECF Nos. 22, 27, 31, 34, and 36). On April 5, 2024, the undersigned entered another Order and Notice directing Plaintiff to respond to Defendants' motions by May 22, 2024, and warning that the failure to timely do so would result in the motions being treated as unopposed and may result in the dismissal of the matter for failure to prosecute. (ECF No. 40 at 1-2). That Order and Notice also again warned Plaintiff that the failure to update his contact information would similarly result in the recommended dismissal of this matter for failure to prosecute. (*Id.* at 2).

Plaintiff failed to respond to Defendants' motions to dismiss and, from a review of the West Virginia Division of Corrections and Rehabilitation's ("WVDCR") website, it appears that he has been released from custody to serve a parole term.[2] However, he failed to notify the court or defense counsel of his updated contact information. Consequently, Defendants have filed additional motions requesting that their motions to dismiss be treated as unopposed and further arguing that this matter should be dismissed for failure to prosecute. (ECF Nos. 42, 43, and 44).

---

[2] It is unclear when Plaintiff was released on parole and, thus, although no mail has been returned as undeliverable, it is possible that Plaintiff did not receive the court's most recent Order and Notice entered on April 5, 2024. (ECF No. 40). Nonetheless, Plaintiff was notified twice before of his obligation to update his contact information and the consequences if he failed to do so. Thus, the undersigned believes that he was fully aware of those consequences and has abandoned his claims.

## II.    DISCUSSION

### A.    Dismissal for failure to prosecute under Rule 41(b).

Rule 41(b) of the Federal Rules of Civil Procedure provides for the dismissal of an action for the plaintiff's failure to prosecute or to comply with the court's rules or orders. *See Link v. Wabash R. Co.*, 370 U.S. 626, 629 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."); *see also McCargo v. Hedrick*, 545 F.2d 393 (4th Cir. 1976). However, in determining whether such a harsh sanction is appropriate, the court must balance the following factors: (1) the degree of personal responsibility on the part of the plaintiff; (2) the amount of prejudice to the defendant caused by the delay in prosecution; (3) the presence or absence of a history of plaintiff deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal. *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978).

"A district court need not engage in a rigid application of this test, however, when a litigant has ignored an express warning that failure to comply with an order will result in the dismissal of his claim." *Taylor v. Huffman*, No. 95-6380, 1997 WL 407801, at *1 (4th Cir. 1997) (unpublished). Such is the case here. As noted above, Defendants' additional motions to dismiss assert that Plaintiff's failure to respond to their motions to dismiss should deem the same unopposed and, further, that this matter should be dismissed for failure to prosecute. (ECF Nos. 42, 43, and 44).

Plaintiff failed to comply with the undersigned's multiple express notifications of his obligation to update his contact information and warnings that the failure to do so would result in dismissal of this civil action for failure to prosecute. Thus, he has failed to prosecute this action as required. The responsibility for the delay in the progress of

this matter is entirely on Plaintiff and dismissal appears to be the only appropriate sanction, as Plaintiff has not made his current whereabouts known to the court or other parties, and the defendant would be unduly prejudiced by the continued prosecution of this matter which has been largely delayed due to Plaintiff's dilatory actions.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to prosecute this matter and that Defendants' motions to dismiss for failure to prosecute should be granted.

### B.    Dismissal for failure to state a claim.

Even if the presiding District Judge were to determine that dismissal of this matter for failure to prosecute is not warranted at this time, there are various other reasons for dismissal of the claims against each set of defendants.  The undersigned will briefly address these reasons, as asserted in Defendants' unopposed motions to dismiss.

### 1.    Superintendent Ronnie Thompson

First, with respect to the Superintendent, who was not even identified by name in the Amended Complaint,[3] Plaintiff has alleged nothing more than his alleged failure to respond to Plaintiff's grievances, and his allegations otherwise suggest that he is attempting to hold the Superintendent liable under a theory of *respondeat superior* for the actions of other correctional staff.  Such allegations are insufficient to state a plausible claim for relief under 42 U.S.C. § 1983.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 675-76 (2009) *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)*; Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (government

---

[3] For purposes of service of process, the court presumed that Ronnie Thompson, the current Superintendent at the SCRJ was also the Superintendent during the operative time addressed in the Amended Complaint.  However, nowhere within the Amended Complaint does Plaintiff specifically mention Ronnie Thompson by name.

officials may not be held vicariously liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior* and must allege that each defendant's own individual actions violated the Constitution).  As noted in Thompson's memorandum in support of his motion to dismiss, "to survive a motion to dismiss, a plaintiff must allege **personal involvement** on the part of each defendant in a constitutional violation and demonstrate a causal connection between the act and his alleged injury.  *Green v. McGrue*, 2019 U.S. Dist. LEXIS 137361, *18 (citing *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)).  (ECF No. 24 at 5).

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'"  *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss.  *Id.* at 648 (quoting

*McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). This court construes a pro se plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

Although Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" the pleading must "give[] fair notice and state[] the elements of the claim plainly and succinctly." 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.13 at 8-111 (2d Ed. 1983). Thus, "[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim . . . ." *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). A plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" that support each of his claims. *Id., quoting Powell v. Workmen's Comp. Bd.*, 327 F.2d 131, 137 (2d Cir. 1964).

As noted above, "[t]he liberal construction requirement [afforded to pro se litigants] will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law." *Adams-Bey v. Rogers*, No. 3:17-cv-210-FDW, 2018 WL 1413196, *3 (W.D.N.C. Mar. 21, 2018) (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990)).  Thus, a pro se complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Id.*  This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).  Quite simply, "[d]istrict judges have no obligation to act as counsel or paralegal to pro se litigants." *Pliler v. Ford*, 542 U.S. 225 (2004).

Thompson, as Superintendent, serves in a supervisory role at the SCRJ.  While he cannot be held liable under a theory of *respondeat superior* for the actions of his subordinates, the Fourth Circuit has recognized a separate theory of "supervisory liability," by which a supervisor may be held liable, through his own deliberate indifference to, or tacit authorization or approval of, constitutional violations by his or her subordinates.  *See Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994).  Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."  *Id.* at 798 (quoting *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).

The *Shaw* Court discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

> 1) The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; 2) The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and 3) There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799.  Such liability requires the prison official's "actual subjective awareness" of an excessive risk of harm or safety.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive. *Id.* at 838.  As further noted by the Fourth Circuit in *Evans v. Chalmers*:

> [T]he Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead a supervisor can only be held liable for "his or her own misconduct." [556 U.S. at 677.]

703 F.3d 636, 660-61 (4th Cir. 2013).  Thus, to hold a supervisory defendant, such as Thompson, liable, Plaintiff must allege facts that allow the court to draw a reasonable inference that the supervisor's own conduct permitted a specific constitutional violation to occur.  As asserted by Thompson in his unopposed motion, Plaintiff has failed to do so here.  (ECF No. 23 at 6-10).

His only specific potential allegation against Thompson is his claim that the "Superintendent" should be "held responsible" for "failing to respond to [his] grievances." (ECF No. 9 at 4).  However, this threadbare and conclusory allegation, stating little more than the role of the Superintendent in the grievance process - after the alleged constitutional violation occurred, and to which there is no constitutional right - are insufficient to state any plausible claims against Thompson.  *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (inmates have no constitutional entitlement or due process interest

10

in access to a grievance procedure); *Chester v. Jividen,* No. 2:22-cv-00289, 2023 WL 2591475, at *5 (S.D.W. Va. Mar. 21, 2023); *see also*, *e.g., Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir 2007) (inadequacy of allegations involving supervisory liability based on denial of grievances); *Ferris v. Jones*, No. 4:14-cv-454, 2015 WL 4668297, at *9 (N.D. Fla. Aug. 5, 2015) (granting a motion to dismiss for failure to state a claim of supervisory liability claims predicated on the denial of grievances); *Lowe v. Matheney*, No. 2:13-cv-22416, 2015 WL 5795867 *9 (S.D.W. Va. Sept. 30, 2015) (Goodwin, J.) (inadequacy of allegations involving supervisory liability claim based upon denial of grievances).

Furthermore, to the extent that Plaintiff's Amended Complaint also contains sweeping allegations that the Superintendent should be held liable for Plaintiff's complaints about a litany of his conditions of confinement, including a lack of showers and recreation, or his religious diet issues, he has failed to allege sufficient facts concerning specific knowledge or conduct by Thompson to state a plausible claim for relief against him. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the Amended Complaint fails to state a plausible claim for relief against Defendant Ronnie Thompson and his unopposed motions to dismiss should be granted.

> 2.    The Wexford Defendants.

Plaintiff's claims against the Wexford Defendants must also be dismissed for failure to state a plausible claim. Plaintiff's Amended Complaint fails to allege that the defendants' conduct violated any specific federal constitutional rights. Liberally construed, however, the Amended Complaint appears to allege a claim of deliberate indifference to Plaintiff's serious medical need by the Wexford Defendants. As noted by the Wexford Defendants' motion documents, while deliberate indifference is usually considered under the Eighth Amendment, where the claimant "was a pretrial detainee

11

and not a convicted prisoner at the time of the alleged denial, this claim is governed by the due process clause of the fourteenth amendment rather than the eighth amendment[].” *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *Revere v. Mass. Gen. Hosp.*, 463 U.S. at 244)). (ECF No. 28 at 4).[4]  However, because “[t]he due process rights of a pretrial detainee are at least as great as the eighth amendment protections . . . ,” the Fourth Circuit has recognized that “a pretrial detainee makes out a due process violation if he shows ‘deliberate indifference to serious medical needs’ within the meaning of” Eighth Amendment jurisprudence. *Id.* (ECF No. 28 at 4).

The vehicle for such claims is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983.  While not in itself a source of substantive rights, section 1983 provides a “method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.” *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

To successfully establish a section 1983 claim, “a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law.”

---

[4]  As asserted by Defendant Thompson’s brief, Plaintiff had apparently pled guilty to his state criminal charges but had not yet been sentenced at the time of the instant events.  Thus, despite his guilty plea, it will be presumed for purposes of these motions that he was still a pre-trial detainee, as he was not a “sentenced prisoner.”  *See, e.g., Little v. County of Nassau*, No. 14-cv-00125, 2023 WL 8828825, at *5 (S.D.N.Y. Dec. 21, 2023) (applying Fourteenth Amendment to conditions of confinement claims arising out of death of inmate who had pled guilty but not yet been sentenced).

*Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (emphasis added); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 60 (1989); *Rendall-Baker v. Kohn*, 547 U.S. 830, 838 (1982).  Because Wexford is a contracted medical provider for the WVDCR, a state agency with oversight of the SCRJ, the deliberate indifference standard is applicable to the conduct of Wexford and its employees.  *West v. Atkins*, 487 U.S. 42 (1998) (explaining that a private entity which contracts with the state to provide medical services acts "under color of state law").

However, "[a] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original) (extending "municipal liability" requirements of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), to § 1983 liability of private corporations); *see also Motto v. Corr. Med. Servs.*, Case No. 5:06-cv-00163, 2007 WL 2897854 (S.D.W. Va., Sept. 27, 2007) (Johnston, J.) (unpublished); *Price v. Corr. Med. Servs.*, Case No. 2:08-cv-00259, 2008 WL 5377779 (S.D.W. Va., Dec. 18, 2008) (Faber, J. unpublished); *Howell v. Evans*, 922 F.2d 712, 723-34 (11th Cir. 1991); *Nelson v. Prison Health Services, Inc.*, 9991 F. Supp. 1452, 1465 (M.D. Fla. 1997).  As noted by the Wexford Defendants, the liability of a private corporation under § 1983 is analogous to municipal liability as set forth in *Monell, supra*, 436 U.S. 658 (1978).  *See, e.g., Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) ("In [*Monell*,] the Supreme Court held that a municipal corporation cannot be saddled with section 1983 liability via respondeat superior alone.  We see this holding as equally applicable to the liability of private corporations.").  (ECF No. 28 at 8).

Thus, a plaintiff must sufficiently plead facts, which if true, establish the existence of a corporate policy or custom that allegedly caused injury to the plaintiff and "a single

instance of the complained-of conduct is insufficient to establish that the conduct was undertaken pursuant to policy." (*Id.*) (citing *Revene v. Charles Cnty. Comm'rs.*, 882 F.2d 870, 875 (4th Cir. 1989) and *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985). To the extent that Plaintiff has named Wexford Health Sources, Inc. as a defendant herein, he fails to allege that any policy or custom of Wexford led to the violation of his constitutional rights.

The Wexford Defendants correctly assert that there are no factual allegations in the complaint that can plausibly establish that Wexford has a policy or custom that led to his constitutional injury. Their memorandum of law asserts:

> Here, the Plaintiff has failed to make adequate factual allegations in this regard. Nowhere in his Amended Complaint does he allege that his alleged injuries were the result of a corporate policy maintained by Wexford. Rather, his only allegations portray single instances of conduct – allegedly failing to treat him appropriately for his injured hand – with no perceivable relationship to an alleged corporate policy. This is plainly insufficient under *Monell* and should subject his § 1983 claim against Wexford to dismissal, with prejudice.

(*Id.* at 8-9). The undersigned agrees that Plaintiff's claim against Wexford is insufficiently pled.

Likewise, Plaintiff's claim against "Unknown Medical Staff" is also insufficiently pled. As addressed above, Plaintiff must state enough facts to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Twombly*, 550 U.S. at 555. Here, even assuming that Plaintiff's Amended Complaint is liberally construed to be raising a deliberate indifference claim concerning his medical treatment (or lack thereof) by Wexford staff, his failure to specifically identify any individual defendants is fatal to his claim because he has not alleged that any particular person was deliberately indifferent to his serious medical needs.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834. (Citations omitted.)  The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases).  "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.  *See id.*  Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment.  *See Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852.  As asserted by the Wexford Defendants, Plaintiff's

allegations fail to plausibly establish that any particular Wexford employee acted with deliberate indifference to a serious medical need. Their brief states:

> Here, Plaintiff has failed to plead any facts that would support a cause of action for deliberate indifference against the unknown medical staff. Plaintiff admits that he was seen approximately three weeks after the incident and in fact, a diagnostic study was ordered following this examination. Thus, there are no allegations that Plaintiff's alleged serious medical need was ignored. Plaintiff simply is upset with the timing of the treatment.

> However, the Fourth Circuit Court of Appeals has stated: "[w]here a deliberate indifference claim is predicated on a delay in medical care, we have ruled that there is no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *See Webb v. Hamidullah*, 281 F. App'x 159, 166-67 (4th Cir. 2008) (emphasis added); *see also Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.") (internal quotation marks omitted)." *Formica v. Aylor*, 739 Fed. Appx. 745, 755 (4th Cir. 2018).

> Plaintiff pleads no facts to support that the delay resulted in some substantial harm to him. He pleads no facts of frequent complaints of severe pain or marked exacerbation of his medical condition. There simply are no facts to find that the unknown medical staff's actions in the alleged delay were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental medical practice, which as stated above, is not sufficient for a claim for violation of Plaintiff's constitutional rights. Therefore, because Plaintiff has not pled sufficient facts to support a claim for violation of his constitutional rights, the Amended Complaint against the unknown medical staff must be dismissed, with prejudice.

(ECF No. 28 at 6-7).

At best, the Amended Complaint alleges that Plaintiff "believe[s]" he suffered a dislocated thumb and torn ligaments, and that there was a three-week delay before he saw a doctor and had an MRI scheduled and was then transferred before the MRI occurred. However, Plaintiff fails to identify or allege that any particular Wexford employee was responsible for the alleged delay or lack of treatment. Consequently, he

has not plausibly stated that any individual person was deliberately indifferent to a serious medical need.  For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Amended Complaint fails to state a plausible claim for relief against the Wexford Defendants and that their unopposed Motion to Dismiss should be granted.

> 3.     Aramark Correctional Services, LLC.

Plaintiff's Amended Complaint named the "Kitchen Service Provider" as a defendant.  Aramark is the contracted food service provider for the WVDCR.  As relevant to Aramark, Plaintiff alleges nothing more specific than that he wanted the "Food Service Providers . . . to be held responsible for denying [him] meals . . . and treating [him] inhumane[ly] because of their own prejudice, [his] religious preference, [his] ethnicity, and [his] housing in the jail."  (ECF No. 9 at 4).  Liberally construed, Plaintiff's claim against Aramark appears to be grounded solely in the delay in providing him with a kosher religious diet and proper meals at the SCRJ.  Such a claim normally arises under the First Amendment to the United States Constitution or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*.[5]

Under the Free Exercise Clause of the First Amendment to the United States Constitution, made applicable to the states under the Fourteenth Amendment, a prisoner's right to practice his or her religion may only be restricted upon the showing that such restriction is reasonably related to a legitimate penological interest.  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Turner v. Safley*, 482 U.S. 78, 84 (1987). "This approach ensures the ability of corrections officers 'to anticipate security problems and to

---

[5] As RLUIPA only provides for injunctive relief, and Plaintiff has been released from the challenged custody, the undersigned believes that any RLUIPA claim has been rendered moot and will not be further addressed herein.

adopt innovative solutions to the intractable problems of prison administration' [citation omitted] and avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to 'resolution by decree.'" *O'Lone*, 482 at 349-350 (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)).  Thus, federal courts are counseled to exercise judicial restraint in matters of prison administration.  *Turner*, 482 U.S. at 89.  Accordingly, a First Amendment claim turns on the reasonableness of the restriction or action and allows the court to consider whether there are ready alternatives to accommodate the prisoner's religious rights.  *Id.* at 90-91.  However, Plaintiff's Amended Complaint does not allege sufficient facts to support the elements of a First Amendment violation.

Aramark, on the other hand, construed Plaintiff's claim against it to be brought as an Eighth Amendment deliberate indifference claim, potentially grounded in his allegations that he was denied sufficient meals over a two-week period and that the food he was provided made him sick.  (ECF No. 32 at 7-11).  While acknowledging that "inmates must be provided with nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of [an inmate], Aramark's memorandum of law further asserts:

> Based on the Plaintiff's own allegations, he has not established a serious medical need, a serious deprivation, or a significant physical or mental injury as a result of the meals he allegedly received.  Therefore, he cannot maintain a claim against Aramark for a violation of the Eighth Amendment, and his claims against it should be dismissed.

(*Id.* at 9, 11).

Whether Plaintiff's claim is brought under the First or Eighth Amendment, or both, Plaintiff must still properly allege that his constitutional rights were violated by a person acting under color of state law.  As asserted in Aramark's memorandum of law, Plaintiff has failed to allege any policy or custom of Aramark resulted in the violation of his federal

18

constitutional rights. (ECF No. 32 at 11-12). Moreover, Plaintiff's Amended Complaint is silent as to any conduct by specific employees of Aramark. Accordingly, for the same reasons as those proposed for the dismissal of the Wexford Defendants, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Amended Complaint fails to state a plausible claim for relief against Aramark or its staff and Aramark's unopposed motion to dismiss should be granted on this basis.

4.    Failure to exhaust administrative remedies.

Defendants Spence, Roop, and Aramark have each argued in their unopposed motions to dismiss that Plaintiff failed to properly and fully exhaust the available administrative remedies concerning his claims for relief. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), was enacted "to address concerns about the 'ever-growing number of prison condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (*quoting Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners properly exhaust administrative remedies within the prison before filing a civil action. *Id.*; *see also* 42 U.S.C. § 1997e(a). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D.W. Va. Jan. 19, 2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit."

*Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)).  Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been [fully] exhausted." W. Va. Code § 25-1A-2(c).

Exhaustion of administrative remedies is an affirmative defense which must be raised and demonstrated by the defendants, and a plaintiff is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Anderson, supra*, 407 F.3d at 681 (exhaustion of administrative remedies is an affirmative defense to be raised by defendant); *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007) (the burden of proof for failure to exhaust PLRA administrative remedies lies with the defendant).  Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv10648, 2017 WL 4004579, at *3 (S.D.W. Va. 2017) (*citing Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)). If a plaintiff fails to exhaust available administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law on the corresponding claim.  *See Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 72604, at *2 (S.D.W. Va. Feb. 23, 2017).

These defendants have asserted that it is apparent from the face of Plaintiff's complaint documents that he failed to fully and properly exhaust the WVDCR's administrative remedy process prior to filing his initial complaint herein.  While Plaintiff makes a blanket assertion in the form Amended Complaint that he "filed grievances to the superintendent of SCRJ and the WVDCR commissioner," as noted in Spence and Roop's accompanying memoranda of law, "the timing of Plaintiff's Original Complaint, dated

February 10, 2023, and filed and docketed February 21, 2023, shortly after the incident is indicative of his not exhausting the grievance procedure." (ECF No. 35 at 14; ECF No. 37 at 17). Moreover, as further addressed in those briefs, Plaintiff's Amended Complaint acknowledges that Plaintiff had not received a response from the Superintendent (an action which, under the applicable policy, Plaintiff could use to deem the grievance denied, and move on to the next level), and further acknowledged that the Commissioner rejected his grievance appeals because he placed more than one grievance in an envelope in violation of the policies and procedures. (*Id.* citing WVDCR Policy Directive 355.00, attached as Ex. 1 to ECF No. 32). The policy directive makes it clear that "a rejected grievance does not exhaust the grievance process or that step of the process." (ECF No. 35 at 16 and ECF No. 37 at 19, citing Ex. 1 at section VI.C). Thus, it is apparent from the face of the Amended Complaint that Plaintiff did not properly exhaust any relevant grievances based on the rejection thereof by the Commissioner. Aramark's brief, likewise, asserts that there is no evidence to demonstrate that Plaintiff properly exhausted any grievances arising out of his dietary complaints or Aramark's role therein. (ECF No. 32 at 6).[6]

To the extent that Plaintiff's contentions in the Amended Complaint that his grievances "went unanswered" or "were never received back to forward," or he "received no response" may be construed as an assertion that the grievance process was somehow unavailable to Plaintiff, Defendants Spence and Roop further assert that "Plaintiff's blanket contention that the grievance procedure was unavailable to him is without merit

---

[6] Aramark's brief cites to somewhat outdated law (pre-*Jones*) suggesting that Plaintiff must affirmatively plead exhaustion. (ECF No. 32 at 5-6). Nonetheless, as its brief further notes, once the affirmative defense has been asserted by a defendant, "it becomes the prisoner's burden to demonstrate and prove that he exhausted his administrative remedies." (*Id.* at 5, citing *Jones, supra*, 549 U.S. at 216). Plaintiff has not opposed defendants' arguments concerning non-exhaustion herein.

as he does not demonstrate how it was unavailable to him but, rather, acknowledges he did not comply with the requirement that grievances be submitted in separate envelopes." (ECF No. 35 at 16; ECF No. 37 at 19).

In *Ross v. Blake*, 578 U.S. 632, 642 (2016), the Supreme Court held that "the exhaustion requirement hinges on the 'availability' of the administrative remedies. An inmate . . . need not exhaust unavailable remedies." *Id.* The Court further defined "available" as "'capable of use' to obtain 'some relief for the action complained of.'" *Id.*, citing *Booth v. Churner*, 532 U.S. 731, 738 (2001). The *Ross* Court further recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* at 643. Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* at 643-44. Additionally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 644.

Here Defendants assert that Plaintiff's own allegations demonstrate that "the grievance procedure was available and he pursued it but failed to comply with the rules for submitting grievances as he improperly placed more than one grievance in an envelope." (ECF No. 35 at 16; ECF No. 37 at 19). Thus, there is no evidence in the record before this court to demonstrate that the administrative remedy process was unavailable to Plaintiff herein and it is apparent from the face of the Amended Complaint that he did not properly exhaust the available remedies. Accordingly, the undersigned proposes that

the presiding District Judge **FIND** that Plaintiff's Amended Complaint should be dismissed for failure to properly exhaust available administrative remedies.

### III.    FINDINGS AND RECOMMENDATION

For all the reasons stated herein,[7] it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Defendants' Motions to Dismiss (ECF Nos. 22, 27, 31, 34, 36, 42, 43, and 44) and **DISMISS** this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(C), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of Court, specific written objections, identifying the portions of this Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.  Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on Chief Judge Johnston.

---

[7] Defendants' memoranda of law assert additional grounds which the undersigned finds unnecessary to address considering the recommended dismissal of each defendant on the grounds addressed herein.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Plaintiff at his last known address, and to transmit a copy to counsel of record.

June 26, 2024

Dwane L. Tinsley
United States Magistrate Judge